STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2023 CA 0946


CHARLES T. MOORE AND CRYSTAL MILLER

VERSUS

GERMANIA SELECT INSURANCE COMPANY AND DAVID C. MAXEY

Judgment Rendered: **MAY 3 1 2024**


* * * * *

ON APPEAL FROM THE
TWENTY-FIRST JUDICIAL DISTRICT COURT, DIVISION C
IN AND FOR THE PARISH OF TANGIPAHOA
STATE OF LOUISIANA
DOCKET NUMBER 2016-0001786

HONORABLE ERIKA W. SLEDGE, JUDGE PRESIDING


* * * * *


| | |
|---|---|
| Joseph S. Piacun<br>Christopher P. Lawler<br>Metairie, Louisiana | Attorneys for Plaintiff-Appellant<br>Crystal Miller |
| Hoai T. Hoang<br>Lafayette, Louisiana | Attorney for Defendant-Appellees<br>Germania Select Insurance Company<br>and David C. Maxey |


**BEFORE:  THERIOT, PENZATO, AND GREENE, JJ.**

**GREENE, J.**

In this case, the trial court determined a guest passenger injured in an automobile accident failed to prove that all of her alleged injuries were causally connected to the accident. Accordingly, the trial court awarded the guest passenger less than all of the damages she claimed. The guest passenger appeals from the adverse judgment. After review, we amend the judgment to correct a spelling error and affirm the judgment as amended.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2015, Crystal Miller was a guest passenger in a Honda Accord being driven by Charlie Moore in the southbound right lane of Veterans Avenue in Hammond, Louisiana. David Maxey was driving his Ford F250 pickup truck in the adjacent left lane of Veterans Avenue and was pulling a trailer loaded with a boat. As the vehicles navigated a two-lane roundabout intersection, Mr. Maxey's trailer struck Mr. Moore's vehicle, drug it for a distance, and then pushed it into a concrete barrier. Mr. Moore and Ms. Miller were taken by ambulance to North Oaks Medical Center. Relevant here, Ms. Miller was diagnosed with cervical strain and a back contusion. A neurologist later diagnosed Ms. Miller with a concussion and treated her for headaches, facial numbness, neck pain, shoulder pain, back pain, and cervical and lumbar radiculopathy.

On June 30, 2016, Mr. Moore and Ms. Miller filed this personal injury suit against Mr. Maxey and his automobile insurer, Germania Select Insurance Company (Germania). The trial court ultimately conducted a bench trial at which the plaintiffs testified and introduced evidence. Thereafter, the trial court took the matter under advisement to review the parties' extensive documentary evidence, primarily medical records and physician depositions. By amended judgment signed on December 1, 2023,[1] the trial court awarded Mr. Moore $13,500 in special damages and $15,000 in general damages

---

[1] On October 31, 2022, the trial court signed "Reasons for Judgment and Judgment," from which Ms. Miller appealed. In response to this Court's Interim Order remanding the "Reasons for Judgment and Judgment" for correction of deficiencies, the trial court signed a December 1, 2023 amended judgment correcting the deficiencies and filed it into the appellate record. On February 14, 2024, this Court maintained the appeal. We note that the December 1, 2023 amended judgment incorrectly references Mr. Maxey as "Davis Maxey" as opposed to "David Maxey." Under La. C.C. art. 2164, this Court has the authority to correct this misspelling. *See Succession of Dussor*, 2021-1467 (La. App. 1 Cir. 6/6/22), 2022 WL 1961574, *2, n.3. We will amend the amended judgment accordingly.

2

and awarded Ms. Miller $6,000 in special damages and $10,000 in general damages. In written reasons for judgment, the trial court determined Mr. Maxey was 100% at fault in the July 2015 accident, that both plaintiffs had pre-existing injuries that were exacerbated by the accident, but that neither plaintiff was entitled to recover all of the medical expenses he/she claimed were attributable to the accident.

Ms. Miller appeals from the judgment. In a single assignment of error, she claims the trial court erred in awarding her only $16,000 in total damages, despite her incurrence of over $25,000 in medical expenses for what she characterized as "over six years of consistent medical treatment for her injuries, including a traumatic brain injury." In opposition, Mr. Maxey and Germania point out that Ms. Miller was injured in automobile accidents before and after the 2015 accident and, after both, was treated for injuries similar to those attributable to the 2015 accident. The defendants contend the trial court evaluated the evidence, made reasonable factual conclusions regarding credibility and medical causation, and correctly determined that Ms. Miller failed to prove that all of her alleged injuries in this suit were caused by the 2015 accident.

## CAUSATION AND STANDARD OF REVIEW

In a personal injury suit, the plaintiff bears the burden of proving the causal connection between an accident and his resulting injuries by a preponderance of the evidence. *Faul v. Robinson*, 2019-1450 (La. App. 1 Cir. 12/16/20), 316 So.3d 1077, 1080, 2021-00081 (La. 3/9/21), 312 So.3d 584. A tortfeasor is liable only for damages caused by his negligent act, not damages caused by separate, independent, or intervening causes. *Id.* However, if the plaintiff proves that defendant's negligence aggravated a pre-existing condition, the defendant must compensate the victim for the full extent of that aggravation. *Id.*

A factfinder's determination regarding causation, *i.e.*, whether an accident caused the plaintiff's injuries, is a factual question that should not be reversed on appeal absent manifest error. *Id.* Under the manifest error standard, the appellate court does not decide whether the factfinder was right or wrong; rather, it must consider the entire record to determine whether a reasonable factual basis exists for the factual finding, and whether the finding is manifestly erroneous or clearly wrong. *Id.* Reasonable persons

3

frequently can and do disagree regarding causation in particular cases. *Id.* But where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* at 1080. Further, when findings are based on determinations regarding witness credibility, the manifest error standard demands great deference to the factfinder's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Id.* at 1081. Accordingly, for the reviewing court, the issue to be resolved is not whether the factfinder was wrong, but whether the factfinder's conclusions were reasonable in light of the record viewed in its entirety. *McInnis v. Bonton*, 2017-0088 (La. App. 1 Cir. 9/21/17), 232 So.3d 22, 25.

## DISCUSSION

In this case, the defendants introduced evidence showing Mr. Moore and Ms. Miller were in a previous automobile accident in October 2014, approximately nine months before the subject July 2015 accident. After the October 2014 accident, Ms. Miller presented to a chiropractic clinic with complaints of headaches, blurred vision, right-side facial tingling, and pain in her neck, shoulders, arms, right hip, and back. Dr. Matthew Shelly, a chiropractor, treated her through mid-May 2015 for her injuries. On May 13, 2015, Ms. Miller's last visit with Dr. Shelly, she complained of severe back pain at least 90% of the time, daily intermittent right-side facial numbness and tingling, and sometimes vertigo.

The accident at issue here occurred on July 3, 2015, approximately seven weeks after Ms. Miller's last appointment with Dr. Shelly. Ms. Miller and Mr. Moore both described the accident during their trial testimony – they stated that, when Mr. Maxey's boat trailer struck Mr. Moore's vehicle, it drug the vehicle a certain distance, and then forced it off of the road and into a concrete barrier. Ms. Miller described the accident as involving "[a] lot of jolting and jerking," and both Ms. Miller and Mr. Moore testified that Ms. Miller struck her head on the windshield during the accident.

When seen at North Oaks Medical Center emergency room immediately after the accident, Ms. Miller was diagnosed with a cervical strain and a back contusion, given pain medication, and released. Although Ms. Miller testified that she told the North Oaks staff

4

that she hit her head, the North Oaks medical record is silent regarding any examination or treatment for a head injury.

On July 15, 2015, twelve days after the accident, Ms. Miller began seeing Dr. Morteza Shamsnia, a neurologist, with complaints including headaches, dizziness, blurred vision, confusion, memory loss, neck pain, low back pain, and radiating pain to the right extremity. At her next appointment, on August 28, 2015, she additionally complained of facial numbness. Dr. Shamsnia diagnosed Ms. Miller with a concussion and referred her for a brain MRI, which showed a left-sided abnormality supportive of his concussion diagnosis. He treated Ms. Miller with pain medications through early 2016 and then did not see her again until September 2017, about 20 months later. After that gap, Dr. Shamsnia continued to treat Ms. Miller, from September 2017 through December 2022, for complaints consistent with those for which he had treated her since the 2015 accident.

During Ms. Miller's gap in treatment with Dr. Shamsnia, she saw a second neurologist, Dr. Troy Beaucoudray, on six occasions between October 2016 and August 2017. Dr. Beaucoudray prescribed medications to treat Ms. Miller's complaints of headaches, neck pain, and back pain. Also during that period, on May 5, 2017, Ms. Miller was involved in a third automobile accident, where a vehicle in which she was a passenger was rear-ended. According to Ms. Miller, the 2017 accident aggravated her neck, back, and head conditions. She treated with Dr. Anthony Zuppardo, a chiropractor, on four occasions after the 2017 accident, and reported to him that her neck pain and headaches were much worse than before the accident. Ms. Miller discontinued treatment with Dr. Zuppardo as of June 6, 2017, finding it was "hurting more than helping." At trial, she testified that the 2017 accident's aggravation of her pre-existing conditions did not persist and her pain level eventually returned to the "baseline" level she had experienced since the 2015 accident. She returned to treating with Dr. Shamsnia in September 2017 and that treatment continued through the time of trial in October 2022.

In his deposition (taken in February 2022), Dr. Shamsnia opined that Ms. Miller's concussion symptoms, as well as her neck and low back pain, were caused by the July 2015 accident. However, at his deposition, Dr. Shamsnia was unaware that Ms. Miller had been involved in the 2014 accident or in the 2017 accident. He admitted that some

5

of Ms. Miller's symptoms following the 2014 accident, particularly blurred vision and vertigo, may have been indicative of a concussion. And, without reference to her post-2017 accident medical records, Dr. Shamsnia could not opine on the effect the 2017 accident had on her conditions.

In the following written reasons for judgment, the trial court discussed Ms. Miller's 2014, 2015, and 2017 accidents and made certain factual findings regarding the causal connection between the accidents and Ms. Miller's injuries and medical expenses:

> The records show that Crystal Miller experienced right sided facial numbness and tingling, vertigo, left sided neck pain, headaches, and lumbar pain prior to the [July 2015] accident at issue as a result of a prior [October 2014] accident. She was experiencing those symptoms two months before the subject [July 2015] accident. However, Dr. Shamsnia, Crystal [Miller's] treating neurologist, testified that the subject [July 2015] accident caused her to experience right sided neck pain, and a brain injury due to concussion. He could not definitively state that the [July] 2015 accident caused or exacerbated her low back pain. Both plaintiffs testified that Crystal Miller hit her head on the windshield as a result of the impact with the concrete barrier.
>
> . . .
>
> The court finds that the subject [July 2015] accident exacerbated Crystal Miller's preexisting brain injury/post-concussion symptoms and neck condition.
>
> In reference to special damages, ... Crystal Miller submitted medical bills totaling $23,171.00. In reviewing [those bills], numerous dates of service occurred *after* a May 5, 2017 auto accident that Crystal Miller was involved in and sought treatment for with similar complaints. Therefore, the court cannot relate these expenses more [probably] than not [to] the [July 2015] accident in question. Additionally, Crystal Miller was suffering with similar preexisting pain at the time of this [July 2015] accident in question. The court awards special damages to Crystal Miller in the amount of $6,000.00 (North Oaks - $623.00 and Dr. Shamsnia (prior to 5/5/17 - $7,450.00[)] for a total of $8,073.00 reduced to account for plaintiff's preexisting injuries)[.] No proof of additional special damages was offered or admitted.
>
> The last element to address is general damages. Based upon all of the evidence submitted[,] the court finds that the injuries sustained by ... Crystal Miller were exacerbations of preexisting conditions. It is difficult to ascertain more [probably] than not how long [Crystal Miller] treated specifically for these exacerbations. Again, there is a history of multiple accidents with injury ... and Crystal Miller was involved in a subsequent motor vehicle accident in 2017 with similar complaints. ... The court awards general damages to Crystal Miller in the amount of $10,000.00.
>
> The total award to Crystal Miller is $16,000.00 plus court costs and legal interest from the date of judicial demand.

The trial court was presented with conflicting and unclear evidence regarding the nature, extent, and cause of Ms. Miller's medical conditions. The trial court apparently

determined that, in light of injuries she suffered in the 2014 and 2017 accidents, Ms. Miller did not meet her burden of proving that the July 2015 accident caused all of the injuries for which she treated with Dr. Shamsnia through the date of the October 2022 trial. Rather, the trial court found Ms. Miller only proved the July 2015 accident aggravated pre-existing medical conditions she already had and did not prove the extent of that aggravation. Our review of the trial testimony, depositions, and medical records introduced at trial reveals that the record supports the trial court's conclusion that Ms. Miller did not carry her burden of proof as to causation.

Although Dr. Shamsnia testified that some of Ms. Miller's injuries were caused by the July 2015 accident, the trial court also reviewed medical records from Dr. Shelly, Dr. Beaucoudray, and Dr. Zuppardo showing that her head, neck, and back had been previously injured in the October 2014 accident and again injured in the May 2017 accident. As the factfinder, the trial court was free to accept or reject any medical expert's opinion after weighing and evaluating other medical evidence. *See McInnis*, 232 So.3d at 27. Further, the trial court is not bound to accept a plaintiff's perception, or any other witness's perception, of the nature and the extent of the plaintiff's injuries. *Id.* The trial court apparently weighed Ms. Miller's testimony and credibility and rejected her perception of the extent of the injuries caused by the July 2015 accident. *See Id.* at 27; *Faul*, 316 So.3d at 1085-86.

In sum, the record demonstrates a reasonable factual basis for the trial court's determinations that the October 2014 accident caused Ms. Miller to have "brain injury/post-concussion symptoms and neck condition"; the July 2015 accident exacerbated those pre-existing conditions; Ms. Miller sustained similar injuries in the May 2017 accident; and, Ms. Miller failed to prove her injuries and continuing treatment with Dr. Shamsnia after the May 2017 accident were caused and necessitated by the July 2015 accident. Thus, we will not disturb these permissible factual conclusions drawn by the trial court.

As earlier noted, a defendant whose negligence aggravates a pre-existing condition must compensate the victim for the full extent of that aggravation. *Faul*, 316 So.3d at 1080. We find no manifest error in the trial court's factual determination that

7

Mr. Maxey's negligence in causing the July 2015 accident further caused Ms. Miller to incur $6,000 in medical expenses (the North Oaks bill for $623 plus Dr. Shamsnia's bill through May 5, 2017 totaling $7,450, less a $2,073 reduction for pre-existing injuries) and entitled her to $10,000 in general damages. Ms. Miller's sole assignment of error is without merit.

8

## CONCLUSION

For the above reasons, we amend the December 1, 2023 amended judgment to identify the named defendant as "David Maxey." As amended, we affirm the trial court's amended December 1, 2023 judgment rendered in favor of Crystal Miller and against David Maxey and Germania Select Insurance Company for $16,000 - $6,000 in special damages and $10,000 in general damages. We assess costs of the appeal to Crystal Miller.

**AMENDED; AFFIRMED AS AMENDED.**